Philip J. Pogledich (SBN: 197110)
County Counsel
philip.pogledich@yolocounty.org
Eric May (SBN: 245770)
Senior Deputy County Counsel
eric.may@yolocounty.org
OFFICE OF THE COUNTY COUNSEL
625 Court Street, Room 201
Woodland, California 95695
Telephone: (530) 666-8172
Facsimile: (530) 666-8279

Brenda Aguilar-Guerrero (SBN: 151257)
Anne E. Smiddy (SBN: 267758)
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, California 94607
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Attorneys for Defendant
COUNTY OF YOLO

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN KENT,<br><br>        Plaintiff,<br><br>   v.<br><br>COUNTY OF YOLO and Does 1 through 100 inclusive,<br><br>        Defendant. | Case No. 2:18-cv-02805-MCE-DB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY OF YOLO'S MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**<br><br>Date:    January 24, 2019<br>Time:    2:00 PM<br>Courtroom 7, 14th floor<br>Hon. Morrison C. England, Jr.<br><br>Trial Date:    None Set |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF ALLEGATIONS AND JUDICIALLY NOTICEABLE
      DOCUMENTS ................................................................................................... 2

      A.   The Timeline of the Many State-Wide and Local Regulatory Changes, in
           Conjunction with the Events in the Complaint, Demonstrate the Lack of
           Certainty in Plaintiff's Ability to Commercially Cultivate Cannabis on His
           Property ................................................................................................... 2

      B.   The County Had a Legitimate Purpose in Including YBWAH in the
           Definition of Park in the Interim Ordinance ............................................. 6

      C.   Plaintiff's Property Retains Numerous Economically Beneficial Uses ................... 7

III.  LEGAL ARGUMENT ...................................................................................... 7

      A.   Plaintiff's Complaint is Based on Unsupported Factual and Legal
           Conclusions Contradicted by Judicially Noticeable Documents ............................. 7

      B.   Each of Plaintiff's Causes of Action Contain Fatal Flaws that Warrant
           Dismissal Without Leave to Amend ...................................................................... 9

           1.   Plaintiff Cannot Allege a Protectable Property Interest, a Fatal Flaw
                to the First, Fourth, Fifth and Seventh Causes of Action ............................ 9

           2.   Since the Second Cause of Action is Based Solely on the First Cause
                of Action, the Claim for Injunctive Relief Must be Dismissed ................... 12

           3.   The Claim for Declaratory Relief Should be Dismissed ............................ 12

           4.   Plaintiff's Remaining Sixth Cause of Action Fails to Allege Facts
                that the County Acted Without a Rational Basis in Including the
                YBWAH in the Definition of the Term "Park" ........................................... 13

      C.   In Addition to these Fatal Flaws, the Complaint Contains other Defects that
           Cannot be Cured by Leave to Amend ................................................................. 14

           1.   Plaintiff Fails to Allege a Compensable "Taking" ...................................... 14

           2.   The Amendment Did Not Deny Plaintiff of All Economically
                Beneficial Use of his Property ................................................................. 14

           3.   The Regulatory Uncertainty Regarding "For Profit" Cannabis
                Cultivation Refutes any Claim for "Distinct Investment-Backed
                Expectations" ....................................................................................... 15

           4.   The Amendment Substantially Advances Legitimate State Interests,
                which Precludes a Finding of a Compensable Taking ............................... 17

           5.   Plaintiff's Procedural Due Process Claim also fails, because he has

i

not and Cannot Assert a Denial of Adequate Procedural Protections ......... 17

6.    Plaintiff Cannot State a Claim for Violation of Federal Substantive Due Process Because He Cannot Allege Facts to Establish that the County's Amendment was Arbitrary and Capricious ................................. 18

7.    The State Inverse Condemnation, and the Declaratory Relief and Injunctive Relief Claims, are Barred by the Statute of Limitations ............ 19

IV.    CONCLUSION ................................................................................................. 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*420 Caregivers, LLC v. City of Los Angeles*,
    219 Cal. App. 4th 1316 (2012)............................................................................................13, 18

*Achton v. U.S.*,
    401 F.2d 896 (9th Cir. 1968)......................................................................................................11

*Alves v. United States*,
    133 F.3d 1454 (Fed.Cir.1998)....................................................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................7, 8

*Assoc. of Irritated Residents v. Fred Schakel Dairy*,
    460 F. Supp. 2d 1185 (E.D. Cal. 2006) .......................................................................................8

*Barrios v. Cty. of Tulare*,
    No. 1:13-CV-1665, 2014 WL 2174746 (E.D. Cal. May 23, 2014)............................................10

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................................................8

*Belmont County Water Dist. v. State of California*
    65 Cal. App. 3d 13 (1976) ..........................................................................................................11

*Board of Regents v. Roth*,
    408 U.S. 564 (1972) .....................................................................................................................9

*Brewster v. Bd. of Educ.*,
    149 F.3d 971 (9th Cir. 1998).....................................................................................................17

*Bronco Wine Co. v. Jolly*,
    129 Cal. App. 4th 988 (2005)......................................................................................................9

*Brownfield v. Daniel Freeman Marina Hosp.*,
    208 Cal.App.3d 405 (1989).......................................................................................................12

*California Coastal Com. v. Superior Court*,
    210 Cal. App. 3d 790 (1989), reh'g denied and opinion modified (June 9, 1989)....................20

*Cook v. City of California City*,
    No. 116CV00429DADJLT, 2017 WL 1348951 (E.D. Cal. Apr. 12, 2017) ...............................9

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010)....................................................................................................8

*Cty. of Sonoma v. Superior Court,*
    190 Cal. App. 4th 1312 ..................................................................19, 20

*Daniels–Hall v. Nat'l Educ. Ass'n,*
    629 F.3d 992 (9th Cir.2010) ...................................................................8

*Dolan v. City of Tigard,*
    512 U.S. 374 (1994) ..............................................................................11

*E–Fab, Inc. v. Accountants, Inc. Services,*
    153 Cal. App. 4th 1308 (2007)..............................................................20

*FCC v. Beach Communications, Inc.,*
    508 U.S. 307 (1993) ..............................................................................13

*Gilbert v. City of Cambridge,*
    932 F.2d 51 (1st Cir. 1991) ...................................................................20

*Goldblatt v. Hempstead,*
    369 U.S. 590 (1962) ..............................................................................17

*Gonzales v. Raich,*
    545 U.S. 1 (2005) ....................................................................................9

*Guggenheim v. City of Goleta*
    638 F.3d 1111 (9th Cir. 2010)..........................................................15, 16

*Hadacheck v. Sebastian,*
    239 U.S. 394 (1915) ..............................................................................17

*Hensler v. City of Glendale,*
    8 Cal.4th 1 (1994)............................................................................19, 20

*Loretto v. Teleprompter Manhattan CATV Corp.,*
    458 U.S. 419 (1982) ..............................................................................11

*Lucas v. South Carolina Coastal Council,*
    505 U.S. 1003 (1992) ............................................................................14

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ...........................................................................9, 17

*MHC Fin. Ltd. P'ship v. City of San Rafael,*
    714 F.3d 1118 (9th Cir. 2013)...............................................................15

*Mugler v. Kansas,*
    123 U.S. 623 (1887) ..............................................................................17

*Nollan v. Cal. Coastal Comm'n,*
    483 U.S. 825 (1987) ..............................................................................15

*Palazzolo v. Rhode Island,*
    533 U.S. 606 (2001) ........................................................................15

*Penn Cent. Transp. Co. v. City of New York,*
    438 U.S. 104 (1978) ...................................................................15, 17

*People v. Urziceanu,*
    132 Cal. App. 4th 747 (2005) ........................................................19

*Reddy v. Litton Indus., Inc.,*
    912 F.2d 291 (9th Cir. 1990) ............................................................8

*Robateau v. Wells Fargo Home Mortg.,*
    No. CV 15-504-R, 2015 WL 12765587 (C.D. Cal. May 7, 2015) ...........12

*Ryan v. Cal. Interscholastic Fed.–San Diego Section,*
    94 Cal. App. 4th 1048 (2001) ..........................................................9

*Safe Life Caregivers v. City of Los Angeles*
    243 Cal. App. 4th 1029 ...................................................................10

*San Jose Parking, Inc. v. Superior Court,*
    110 Cal. App. 4th 1321 (2003) ........................................................11

*Schmidt v. County of Nev.,*
    No. 2:10–CV–3022, 2011 WL 2967786 (E.D.Cal. July 19, 2011) ...........10

*Scott v. Pasadena Unified Sch. Dist.,*
    306 F.3d 646 (9th Cir. 2002) ..........................................................12

*Shanks v. Dressel,*
    540 F.3d 1082 (9th Cir. 2008) ........................................................11

*Shell Oil Co. v. Richter,*
    52 Cal. App. 2d 164 (1942) ............................................................12

*Sierra Nevada SW Enterprises, Ltd. v. Douglas Cty.,*
    506 F. App'x 663 (9th Cir. 2013) ..............................................9, 11, 18

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001) ............................................................8

*Staffin v. County of Shasta,*
    No. 2:13–cv–00315, 2013 WL 1896812 (E .D.Cal. May 6, 2013) ...........10

*Thompson v. Illinois Dept. of Professional Regulation*
    300 F.3d 750 (7th Cir. 2002) ............................................................8

*Tollins, Inc. v. County of San Diego,*
    505 F.3d 935 (9th Cir. 2007)..............................................................8

v

*Travis v. Cty. of Santa Cruz*,
    33 Cal. 4th 757 (2004).......................................................................................19

*United Safeguard Distributors Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*,
    145 F. Supp. 3d 932 (C.D. Cal. 2015)..............................................................12

*United States v. 42.13 Acres of Land*,
    73 F.3d 953 (9th Cir. 1996)........................................................................11, 16

*United States v. Fuller*,
    409 U.S. 488 (1973) ...........................................................................................11

**Statutes**

21 U.S.C. § 812(c)....................................................................................................2, 9

21 U.S.C. § 841(a)(1).............................................................................................2, 9

42 U.S.C. § 1983........................................................................................................18

Cal. Bus. & Prof. Code § 19315(a) ............................................................................3

Cal. Bus. & Prof. Code § 26037(a)..........................................................................10

Cal. Bus. & Prof. Code § 26038(c)...........................................................................10

Cal. Bus. & Prof. Code § 26200 (a) ...........................................................................5

Cal. Bus. & Prof. Code §§ 26000-26231 ...................................................................5

Cal. Govt. Code § 65009 ...........................................................................................19

Cal. Govt. Code § 65009(c)(1)(E).............................................................................20

Cal. Health & Safety Code § 11362.768 ....................................................................3

Cal. Health & Safety Code §§ 11362.7 *et seq.*..........................................................3

Cal. Health and Safety Code § 11362.765(a) .............................................................3

Fed. R. Civ. P. § 12(b)(6) ...........................................................................................7

**Other Authorities**

Adult Use Marijuana Act ................................................................................ *passim*

Cal. Assembly Bill 243 ...............................................................................................3

Cal. Assembly Bill 2650 .............................................................................................3

Cal. Assembly Bill 266 ...............................................................................................3

Cal. Senate Bill 420 ................................................................................................2, 3

Cal. Senate Bill 643 ...................................................................................................3

Compassionate Use Act ......................................................................................2, 3, 10

Medical Regulation and Safety Act ........................................................................3. 10

Medical Marijuana Program Act.............................................................................3, 10

Medicinal and Adult-Use Cannabis Regulation and Safety Act ............................ *passim*

Yolo Bypass Wildlife Area on the California Department of Fish and Wildlife
    website, https://www.wildlife.ca.gov/Lands/Places-to-Visit/Yolo-Bypass-WA ........................7

Yolo County Cannabis Land Use Interim Ordinance ............................................ *passim*

# I.     INTRODUCTION

The nascent commercial cannabis industry in California is the quintessential "high risk, high reward" business model.  Cultivation of cannabis is illegal under the federal Controlled Substances Act, but California law allows for limited and thoroughly-regulated commercial cultivation free from local and state-wide prosecution.  These limited immunities do not protect against federal prosecution, and contain significant restrictions that are constantly changing.  Nonetheless, risk-taking entrepreneurs have been rushing to partake in the "green market," despite the inherent uncertainties in the industry's regulations.

Plaintiff John Kent ("Plaintiff") purchased his agriculturally zoned property less than a quarter mile east of the City of Davis in December 2015, when commercial cannabis cultivation was prohibited in the County of Yolo ("the County").  The County adopted an Interim Cannabis Land Use Ordinance (the "Interim Ordinance") on March 22, 2016, which provided a regulatory framework for the limited local immunity in the County for the commercial cultivation of medical marijuana.  Plaintiff obtained a temporary, revocable license pursuant to the Interim Ordinance on March 31, 2017, which was scheduled to expire on January 31, 2018 and was conditioned upon compliance with the Interim Ordinance.  In Plaintiff's Verified Complaint, Plaintiff asserts causes of action for inverse condemnation under California and federal law, declaratory and injunctive relief, due process violations, and equal protection.  All seven causes of action arise out of Plaintiff's challenge to the November 7, 2017 amendment to the Interim Ordinance, which specified that the Yolo Bypass Wildlife Area Headquarters ("YBWAH") is considered a "park."  Plaintiff claims he was unable to renew his license because the amendment caused the cultivation activity on his property to be within the 1,000 feet buffer of a "park," and therefore, in violation of the County Code.

The Complaint fails to state a cause of action, and should be dismissed in its entirety.  Plaintiff cannot plead a protectable property interest, which is a necessary element to the inverse condemnation and due process claims (the first, fourth, fifth, and seventh causes of action).  Since Plaintiff was prohibited from commercially cultivating cannabis on his property without a license, Plaintiff's claims are based on the nonrenewal of the cannabis license, and not his interest in the

1

real property.  Plaintiff's cannabis license is not a protectable property interest under California or federal law.  Furthermore, because Plaintiff's second and third causes of action for injunctive relief are based solely on the first cause of action, they are also defective.  Plaintiff's remaining sixth cause of action for equal protection also fails because Plaintiff cannot allege facts establishing that the County acted arbitrarily by declaring the YBWAH (a community center that serves as the gateway to the Yolo Bypass Wildlife Area) to be a "park."

Although these flaws are fatal to Plaintiff's complaint, additional defects in the claims further demonstrate the futility of amendment.  Plaintiff cannot assert a compensable taking, since the cannabis license has never been part of Plaintiff's title.  Furthermore, the property retains significant economically beneficial uses.  Plaintiff's conclusory allegations of "distinct investment-backed expectations" are refuted by Plaintiff's decision to engage in a heavily regulated use (commercial cannabis cultivation), which was illegal at the time of purchase.  Moreover, the County had a legitimate interest in minimizing the impact of a public nuisance by restricting outdoor cannabis cultivation within 1,000 feet of the YBWAH.  Finally, Plaintiff failed to avail himself of the procedural remedies that apply to facial and as-applied challenges within the requisite time period.  Thus, Plaintiff's complaint should be dismissed in its entirety, without leave to amend.

## II.   STATEMENT OF ALLEGATIONS AND JUDICIALLY NOTICEABLE DOCUMENTS

### A.   The Timeline of the Many State-Wide and Local Regulatory Changes, in Conjunction with the Events in the Complaint, Demonstrate the Lack of Certainty in Plaintiff's Ability to Commercially Cultivate Cannabis on His Property

Cannabis has been, and still is, an illegal Schedule I controlled substance under federal law.  *See* Controlled Substances Act, 21 U.S.C. §§ 812(c), 841(a)(1).  The following is a timeline of the state and local regulations as applied to Plaintiff's claims:

**1996**:  California passed the Compassionate Use Act ("CUA") to allow limited immunity for qualified patients to use marijuana[1] for medicinal purposes.

---

[1] The terms "marijuana" and "cannabis" are used interchangeably in the statutes and in this brief.

**2004**:  Senate Bill 420 was enacted and titled the "Medical Marijuana Program Act ("MMPA") to clarify the scope of the CUA.  Cal. Health & Safety Code §§ 11362.7 *et seq.*  Cannabis cultivation for profit was illegal under the MMPA.  *See* Cal. Health and Safety Code §11362.765(a) (January 1, 2004).

**2011**:  Assembly Bill 2650 was enacted, which, in part, affirmed that counties can adopt ordinances that regulate medical marijuana collectives and cooperatives.  Cal. Health & Safety Code § 11362.768.

**October 9, 2015**:  Governor Brown signed into law the Medical Marijuana Regulation and Safety Act (MMRSA), enacted by the legislature on September 11, 2015, which established a comprehensive regulatory framework for the cultivation, production, transportation, testing, sale and taxation of medical marijuana in California.  *See* Senate Bill 643, Assembly Bill 266, and Assembly Bill 243. The MMRSA allowed for commercial cannabis cultivation, but retained local authority over law enforcement activity, zoning requirements, and local ordinances, governing the cultivation.  *See* Cal. Bus. & Prof. Code § 19315(a).

**December 23, 2015**:  Plaintiff purchased the property located at 45133 County Road 32B, El Macero, California, in the County of Yolo ("Property").  Complaint ¶¶ 7-8.  At the time of purchase, Plaintiff alleges that the Property was being used to cultivate medical marijuana. Complaint ¶ 8.  Plaintiff could not commercially cultivate cannabis on his property at the time of purchase since the County had not yet passed an Ordinance regarding commercial cannabis cultivation.  *See* Senate Bill 643, Assembly Bill 266, and Assembly Bill 243*; see also* Cal. Bus. & Prof. Code § 19315(a).

**January 1, 2016**:  The MMRSA became effective.  *See* Senate Bill 643, Assembly Bill 266, and Assembly Bill 243.

**March 22, 2016**:  Pursuant to the MMRSA, the County passed its original Cannabis Land-Use Interim Ordinance allowing limited, local immunity for commercial cultivation contained in Chapter 20 of Title 5 of the County Code.  *See* Yolo County Ordinance No. 1467, attached to the County's Request for Judicial Notice ("RJN") as Exhibit 1.  The Interim Ordinance prohibited all commercial cannabis cultivation, but provided limited immunity from local prosecution where the

1  cultivator complied with all the provisions of the Interim Ordinance.  As explained in the Interim

2  Ordinance:

> Unregulated marijuana cultivation can be harmful to the welfare of
> the surrounding community and its residents and constitute a public
> nuisance; and … can adversely affect the health, safety and well-
> being of the County, its residents and environment.  The regulating
> of the cultivation of marijuana is proper and necessary to avoid the
> risks of criminal activity, degradation of the natural environment
> and offensive odor that may result from unregulated medicinal
> marijuana cultivation.

8  *See* Yolo County Ordinance No. 1467, § 1(I).

9     **October 25, 2016**:  The County passed Ordinance No. 1473 to amend the Interim

10  Ordinance, in part, to add a nuisance abatement process, and to place additional restrictions on

11  cultivator qualifications.  *See* Ordinance No. 1473 § 1, RJN, Ex. 2.  The amendment also declared

12  that a violation of the Interim Ordinance constituted "a public nuisance,. . ." Ordinance No. 1473 §

13  3 citing YCCO §§ 5-20.04.B; 5-20.08.

14     **November 8, 2016**:  California voters passed Proposition 64 to legalize non-medical use of

15  marijuana, entitled the Control, Regulate, and Tax Adult Use of Marijuana Act ("AUMA").

16     **November 22, 2016**:  The County passed Ordinance No. 1478 "to expand the scope of

17  prohibited activities until the County develops and implements more comprehensive medical

18  marijuana regulation."  *See* Ordinance No. 1478, RJN, Ex. 3.

19     **January 10, 2017**:  The County passed Ordinance No. 1483 to amend the Interim

20  Ordinance, in part, to broaden the exception to the cultivation prohibition, and add a 1,000 foot

21  cultivation setback from tribal lands.  *See* Ordinance No. 1483, RJN, Ex. 4.

22     **February 7, 2017**:  The County passed Ordinance No. 1485 to amend the Interim

23  Ordinance to prohibit, to the maximum extent allowed by state law, commercial activities

24  involving non-medical marijuana.  *See* Ordinance No. 1485, RJN, Ex. 5.

25     **March 22, 2017**:  Plaintiff's received "final approval of his license."  Complaint ¶ 11-12.

26  Plaintiff's license was temporary, and scheduled to expire on January 31, 2018.  Complaint, Ex. C.

27  Plaintiff's license was conditioned upon compliance with the Interim Ordinance.  *Id.*

28     **June 2017**:  The California Legislature passed the Medicinal and Adult-Use Cannabis

1   Regulation and Safety Act ("MAUCRSA"). *See* Cal. Bus. & Prof. Code §§ 26000-26231. Under

2   MAUCRSA, cities and counties continued to have the authority to regulate, or ban, the cultivation

3   of marijuana. *See* MAUCRSA, Cal. Bus. & Prof. Code § 26200 (a).

4          **July 6, 2017**:  The County issued a letter to all licensed cannabis cultivators.  RJN, Ex. 6.

5   The County stated,

6              The purpose of this letter is to ensure you have notice of the
               upcoming discussion and the potential for changes to the program,
7              including changes that may reduce or eliminate rights under existing
               licenses.  We understand that many license holders are presently
8              considering significant investments in equipment and facilities to
               support cultivation and related activities.  We encourage you to
9              consider the potential for changes to the program prior to
               undertaking significant investments.

10

11         **November 7, 2017**:  At a public hearing, the Board of Supervisors adopted an amendment

12   to the Interim Ordinance.[2]  *See* Ordinance No. 1493, RJN, Ex. 8.  Ordinance No. 1493 changed the

13   Interim Ordinance in a number of ways.  In part, the amendment defined the term "park" to mean

14              [A]n area of land used for community recreation owned or operated
               by a public entity or a private area of land recognized as a
15              neighborhood park utilized by youth, County-owned campgrounds
               and the Yolo Bypass Wildlife Area headquarters.  State or Federal
16              designated parks and forestlands are recognized within the Yolo
               County General Plan are not included within this definition."

17

18   Ordinance No. 1493, citing the amended YCCO § 5-20.03.CC.

19         **December 1, 2017**:  Plaintiff received notification from the County's Cannabis Task Force

20   that his license was ineligible for renewal because the cultivation site was within a restricted

21   location.  Complaint, Exhibit E, incorporated by reference at ¶ 14.

22         **December 4, 2017**:  Plaintiff's attorney sent a letter to the Yolo County Board of

23   Supervisors.  Complaint, Exhibit I.  The letter "demand[ed] reconsideration" of the amendment to

24   the ordinance. *Id.*

25         **December 19, 2017**:  County counsel responded to the letter, stating that an appeal is not

26

27   [2] The Yolo County Board of Supervisors Meeting Minutes are attached to the County's Request
     for Judicial Notice as Exhibit 7.

28

the proper method to challenge the adoption of Ordinance No. 1493.  *See* Complaint, Exhibit J, incorporated by reference at ¶ 20.  The County stated that Plaintiff's appeal request "takes issue solely with the legislative action of the Board of Supervisors."  *Id.*  The County stated "[n]o administrative remedies are available – and hence, none must be exhausted - as a prerequisite to filing an action with the appropriate court in connection with the adoption or terms of Ordinance No. 1493."  *Id.*  The County also explained the Wildlife Headquarters is a "community building with public parking, a conference room, and various exhibits used regulatory in education programs for K-12 students and members of the local community, with demonstrations wetlands with a public walking trail and interpretive signs immediately adjacent."  *Id.*  Finally, the County explained that Plaintiff could relocate his cultivation facility to a suitable location pursuant to Yolo County Code § 5-20.04.A.2.b.8.  *Id.*

      **December 21, 2017**:  The County Cannabis Task Force sent another letter to correct confusion regarding the December 1, 2017 correspondence.  Complaint, Exhibit K, incorporated by reference at ¶ 21.  The Cannabis Task Force stated that the notice was meant to allow Plaintiff to streamline the renewal process by allowing applicants to clear violations and address nuisances before applying for a renewal.  *Id.*  The letter stated that the County had not yet rejected a renewal application, so no appeal right had arisen.  The letter stated that no appeal would be scheduled, but the notice did not bar Plaintiff from submitting a renewal application.  *Id.*

      **January 31, 2018**:  The license expired on January 31, 2018.  *See* Complaint Exhibit C. The Complaint does not allege that a renewal application was ever submitted to the County, or that Plaintiff filed a writ of administrative mandamus or action for declaratory relief to obtain judicial relief.  *See* Complaint ¶¶ 1-76.

      **B.**      **The County Had a Legitimate Purpose in Including YBWAH in the Definition of Park in the Interim Ordinance**

      "The YBWAH was established in 1994 by the CA Fish and Game Commission." Complaint ¶ 55.  The Yolo Bypass Wildlife Area is described by the California Department of Fish and Wildlife as "the perfect spot to escape urban life ... Bird watchers, hunters and schoolchildren all come to the area to experience wildlife up-close in nature. … [The] Yolo

Bypass Wildlife Area's approximately 16,600 acres is a haven for fish, waterfowl, shorebirds and wading birds, neotropical migratory birds, raptors, invertebrates, snakes, turtles, toads, and bats."[3] However, Plaintiff's complaint challenges the amendment because "[t]he YBWAH is adjacent to the one-acre portion of the Claimant's property that was approved to cultivate cannabis" causing Plaintiff to be out of compliance with the County Code.  Complaint ¶ 17.

C.     **Plaintiff's Property Retains Numerous Economically Beneficial Uses**

Plaintiff's property is zoned Agricultural Intensive (A-N), which designates "lands best suited for intensive agricultural uses typically dependent on higher quality soils, water availability, and relatively flat topography."  YCCO § 8-2.302.  The parcel, thus, can be used for various agricultural production and processing, animal facilities, agricultural commercial and rural recreation, and agricultural industrial uses.[4]  In addition, the property is allowed one primary dwelling or a duplex of unlimited size and one secondary dwelling up to 2,500 square feet.[5]

III.   **LEGAL ARGUMENT**

A.     **Plaintiff's Complaint is Based on Unsupported Factual and Legal Conclusions Contradicted by Judicially Noticeable Documents**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

---

[3] The webpage for the Yolo Bypass Wildlife Area on the California Department of Fish and Wildlife website, https://www.wildlife.ca.gov/Lands/Places-to-Visit/Yolo-Bypass-WA, is attached as Exhibit 9 to the County's Request for Judicial Notice.

[4] The Yolo County Parcel Report for the Property, which identifies the Property as zoned A-N, is attached to the County's Request for Judicial Notice as Exhibit 10.  YCCO Tables 8-2.304(a)-(b) are attached to the County's Request for Judicial Notice as Exhibit 11.  The Tables explain the numerous options available to Plaintiff:  crop production, orchards, or vineyards, keeping farm animals, dry land farming, wine, beer, spirits, and olive oil production, etc.; local farm retail, a small winery, brewery, distillery, or olive mill, a small bed & breakfast, medium-sized solar facility, etc.; (with the issuance of a use permit) a large winery, brewery, distillery, or olive mill, etc.

[5] YCCO Table 8-2.305 is also attached as Exhibit 11 to the County's Request for Judicial Notice.

1   elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus,

2   courts are not bound to accept as true allegations that are legal conclusions, even if cast in the

3   form of factual allegations.  *Ashcroft*, 556 U.S. at 681.  The court may also disregard allegations

4   contradicted by facts established by documents attached as exhibits to the complaint.  *Thompson v.*

5   *Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 754 (7th Cir. 2002).  Moreover, the district court

6   need not "accept as true allegations that contradict matters properly subject to judicial notice."

7   *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The court can also

8   "augment" the facts and inferences from the body of the complaint with "data points gleaned from

9   documents incorporated by reference into the complaint, matters of public record, and facts

10  susceptible to judicial notice."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

11          Here, the various versions of the Interim Ordinance underlie all of the causes of action in

12  the Complaint, and are subject to judicial notice as a municipal ordinance.  *See Tollins, Inc. v.*

13  *County of San Diego*, 505 F.3d 935, 938 n.1 (9th Cir. 2007) ("Municipal ordinances are proper

14  subjects for judicial notice.").  Further, the County's letter and Board of Supervisors meeting

15  minutes are "records of administrative bodies," which are not reasonably subject to dispute, and

16  are, thus, judicially noticeable.  *See Assoc. of Irritated Residents v. Fred Schakel Dairy*, 460 F.

17  Supp. 2d 1185, 1189–90 (E.D. Cal. 2006) (taking judicial notice of letter from agency stating

18  permit application was incomplete).  Finally, it is proper to take judicial notice of matters

19  contained on government websites (in this case, the Yolo Basin information on the California

20  Department of Fish and Wildlife website, and the Parcel Report from the County's GIS Public

21  Viewer).  *See Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir.2010).  Since

22  these documents are judicially noticeable, the court can consider the information, and need not

23  accept as true facts that contradict these documents.  Further, where, as here, amendment would be

24  futile, the court need not grant leave to amend.  *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d

25  291, 296 (9th Cir. 1990).  Thus, the Complaint should be dismissed without leave to amend.

26  ///

27  ///

28  ///

**B.**     **Each of Plaintiff's Causes of Action Contain Fatal Flaws that Warrant Dismissal Without Leave to Amend**

**1.**     **Plaintiff Cannot Allege a Protectable Property Interest, a Fatal Flaw to the First, Fourth, Fifth and Seventh Causes of Action**

Plaintiff asserts, "Defendant's actions of arbitrarily designating the YBWAH as a 'park' under the Yolo County Code and improperly applying the change to Plaintiff's Property amounts to a taking of private property by Defendant, for which Plaintiff has not been compensated." Complaint ¶ 35.  However, Plaintiff's fee interest in the property retains all other commercial and residential uses allowed without the cannabis cultivation license.  YCCO Tables 8-2.304(a)-(b); YCCO Table 8-2.305.  Plaintiff, at all times, could ***not*** commercially cultivate cannabis on his property without the license.  Thus, Plaintiff's claims are based on the nonrenewal of the cannabis license, which is not a protectable property interest under California or federal law.  Since Plaintiff fails to allege a protectable property interest, the claims for inverse condemnation,[6] and for violation of substantive[7] and procedural due process[8], fail.

**(a)**     **Commercial Cannabis Cultivation is Not Included in Plaintiff's "Bundle" of Property Rights**

But for the cannabis license, Plaintiff was prohibited from commercially cultivating marijuana on his property.  Marijuana remains illegal under federal law.  *See* Controlled Substances Act, 21 U.S.C. §§ 812(c), 841(a)(1) (listing marijuana as a Schedule I drug), *see also Gonzales v. Raich*, 545 U.S. 1 (2005).  Moreover,  no provision of state law in California creates a ***right*** to cultivate marijuana.  See *Cook v. City of California City*, No. 116CV00429DADJLT, 2017 WL 1348951, at *4 (E.D. Cal. Apr. 12, 2017), citing *Maral v. City of Live Oak*, 221 Cal.

---

[6] *Bronco Wine Co. v. Jolly*, 129 Cal. App. 4th 988, 1030 (2005), as modified on denial of reh'g (June 20, 2005) (citations omitted) (Plaintiff must establish he has a protectable property interest to assert an inverse claim).

[7] *Sierra Nevada SW Enterprises, Ltd. v. Douglas Cty.*, 506 F. App'x 663, 665–66 (9th Cir. 2013) (a plaintiff must allege "that a state actor deprived it of a constitutionally protected ... property interest …").

[8] *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972); *Ryan v. Cal. Interscholastic Fed.–San Diego Section*, 94 Cal. App. 4th 1048, 1059 (2001) (Procedural due process, as required by the United States Constitution, protects only those matters which may be construed as liberty or property interests).

App. 4th 975, 984 (2013) ("[A]s we held in *Browne [v. County of Tehama*, 213 Cal. App. 4th 704 (2013)] and our Supreme Court confirmed in [*City of Riverside v.] Inland Empire [Patients Health and Wellness Center, Inc*., 56 Cal. 4th 729 (2013)], there is no right—and certainly no constitutional right—to cultivate medical marijuana.").  In *Safe Life Caregivers v. City of Los Angeles*, the California Court of Appeal for the Second District "reiterat[ed] what other appellate courts, including [California's] Supreme Court, have already held -- there is no statutory or constitutional right to possess, cultivate, distribute or transport marijuana for medical purposes" under the MMRSA, MMPA and CUA.  243 Cal. App. 4th 1029, 1032, 1049 (2016), review denied (Mar. 30, 2016).  The *Safe Life Caregivers* court found that each regulation "create[d] only a limited immunity and not a right."  243 Cal. App. 4th at 1049 (citations omitted).[9]  Claims for federal due process violations have been dismissed because there is "no cognizable property interest in marijuana as indisputably illegal and contraband per se."  *Barrios v. Cty. of Tulare*, No. 1:13-CV-1665, 2014 WL 2174746, at *4 (E.D. Cal. May 23, 2014); *see also Staffin v. County of Shasta*, No. 2:13–cv–00315, 2013 WL 1896812 (E .D.Cal. May 6, 2013); *Schmidt v. County of Nev.*, No. 2:10–CV–3022, 2011 WL 2967786 (E.D.Cal. July 19, 2011).  Thus, Plaintiff cannot assert that he had a "right" to commercially cultivate marijuana on his property.

        **(b)**        **Plaintiff Cannot Assert a Property Interest in the Nonrenewal of the Temporary Cannabis License**

The license Plaintiff received pursuant to the Interim Ordinance was a temporary, government-created, privilege which was subject to developing rules and regulations.  *See* Complaint, Ex. C ("Conditions of approval...: Must comply with …Yolo County Code of Ordinances, Chapter 20 of Title 5.");  *see also* Interim Ordinance, as amended, RJN Exs. 1-5, 7. The license could also be revoked if the odor or contaminants caused annoyance to a "considerable number of people."  *See* Ordinance No. 1473, RJN, Ex. 2.

---

[9] Even though the AUMA and MAUCRSA were not enacted until after Plaintiff purchased his property, the same "limited immunity" rationale applies to commercial cultivation under current law, since the statutes protect only against state prosecution, *if* licensees follow rigorous local and state requirements.  *See* Cal. Bus. & Prof. Code § 26037(a). Criminal penalties continue to apply to unlicensed cultivation under California law.  *See* Cal. Bus. & Prof. Code § 26038(c).

The Fifth Amendment does not require payment for the enhanced value to property as a result of revocable, government-issued licenses or permits. *See United States v. Fuller*, 409 U.S. 488 (1973) (no compensation is required for the enhanced value to land as a result of revocable government permits); *see also Alves v. United States*, 133 F.3d 1454, 1457 (Fed.Cir.1998) ("governmentally-created rights or privileges appurtenant to the fee" are not compensable property interests in an inverse condemnation proceeding). Further, there is no compensable taking where the government refuses to renew a license. *United States v. 42.13 Acres of Land*, 73 F.3d 953, 956–57 (9th Cir. 1996). And, a revocable license carries no interest in real property. *See Achton v. U.S.*, 401 F.2d 896, 899 (9th Cir. 1968) ("the tenuous rights of licenses and permits" are not compensable within the meaning of the Fifth Amendment; *see also San Jose Parking, Inc. v. Superior Court*, 110 Cal. App. 4th 1321, 1329 (2003), as modified on denial of reh'g (Aug. 28, 2003); *Belmont County Water Dist. v. State of California* 65 Cal. App. 3d 13, 17 (1976). Likewise, for purposes of due process, there is no protectable property interest "if 'the reviewing body has discretion ... to impose licensing criteria of its own creation.'" *Shanks v. Dressel*, 540 F.3d 1082, 1091 (9th Cir. 2008) (citations omitted); *see also Sierra Nevada SW Enters., Ltd. v. Douglas Cty.*, 506 F. App'x 663, 665–66 (9th Cir. 2013) (same analysis for a constitutionally protected interest applied to substantive and procedural due process claims). Any allegation that the license would be a property right of infinite duration is refuted by the ***numerous*** regulatory changes to the Interim Ordinance, and the terms of the revocable, temporary license.

Moreover, the license lacked the requisite characteristics which are fundamental to property interests. The license was not transferrable. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435–36 (1982) (rights to dispose of property and to sell it is part of an individual's bundle of property rights). The license was not exclusive, *i.e.* Plaintiff lacked authority to exclude others from medicinal cannabis cultivation in the County. *See Dolan v. City of Tigard*, 512 U.S. 374, 384, (1994) (the "right to exclude others is 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'")

For these reasons, Plaintiff cannot claim a protectable property interest in his temporary, revocable cannabis license, and Plaintiff's claims for inverse condemnation, and for violations of

1   substantive and procedural due process, necessarily fail as a matter of law.

2           **2.      Since the Second Cause of Action is Based Solely on the First Cause of Action, the Claim for Injunctive Relief Must be Dismissed**

3

4           Plaintiff seeks a preliminary and permanent injunction "to enjoin Defendant's enforcement

5   of the County Code against Plaintiff…."  Complaint ¶ 46.  This request is based solely on the

6   County's purported deprivation of "all economically beneficial use for Plaintiff's land without just

7   compensation."  Complaint ¶ 44.  However, "[i]njunctive relief is a remedy and not, in itself, a

8   cause of action, and a cause of action must exist before injunctive relief may be granted."  *Shell*

9   *Oil Co. v. Richter*, 52 Cal. App. 2d 164, 168 (1942).  Since Plaintiff cannot succeed on the merits

10  on the inverse condemnation claims, his request for injunctive relief fails.

11          **3.      The Claim for Declaratory Relief Should be Dismissed**

12          In order to be an independent basis for stating a claim, declaratory relief requires an actual

13  controversy involving justiciable questions relating to the rights or obligations of a party.  *Scott v.*

14  *Pasadena Unified Sch. Dist*., 306 F.3d 646, 658 (9th Cir. 2002); *see also Brownfield v. Daniel*

15  *Freeman Marina Hosp*., 208 Cal.App.3d 405 (1989).  Where a claim for declaratory relief is

16  inseparable from claims which fail as a matter of law, there is no longer an existing controversy

17  between the parties, and the declaratory relief claim should be dismissed.  *See Robateau v. Wells*

18  *Fargo Home Mortg*., No. CV 15-504-R, 2015 WL 12765587, at *3 (C.D. Cal. May 7, 2015).

19  Here, Plaintiff's declaratory relief claim is based solely on the California inverse condemnation

20  claim.  *See* Complaint ¶ 50.  The declaratory relief claim fails because there is no underlying

21  controversy; Plaintiff has no protectable property interest in his temporary commercial cannabis

22  license, and cannot assert a claim for inverse condemnation as a matter of law.

23          Further, Plaintiff fails to present facts showing he requires "the immediacy of a judicial

24  declaration."  *United Safeguard Distributors Ass'n, Inc. v. Safeguard Bus. Sys., Inc*., 145 F. Supp.

25  3d 932, 961 (C.D. Cal. 2015) (dismissal of declaratory relief claim because judicial declaration

26  was not a "preventative measure, but a remedial measure" to address breach of contract claim).  In

27  this case, there is no need for an immediate judicial declaration to prevent harm.  Plaintiff failed to

28  make a facial challenge to the ordinance within the applicable time period.  *See* Section (C)(7),

1  *infra*.  Plaintiff did not reapply for his license, and waited almost ten months from the expiration

2  of his license to bring this claim for declaratory relief.  Thus, Plaintiff's request is not

3  preventative, but merely a repetition of the inverse condemnation claim for damages.

    **4.**    **Plaintiff's Remaining Sixth Cause of Action Fails to Allege Facts that the County Acted Without a Rational Basis in Including the YBWAH in the Definition of the Term "Park"**

6  "In areas of social or economic policy not involving suspect classifications or fundamental

7  rights, a statute must be upheld so long as there is any reasonably conceivable set of facts that

8  provides a 'rational basis' for the classification."  *420 Caregivers, LLC v. City of Los Angeles*, 219

9  Cal. App. 4th 1316, 1333–34 (2012), as modified (July 19, 2012), as modified (Sept. 25, 2013),

10  publication ordered sub nom. 308 P.3d 860 (Cal. 2013) (citing *FCC v. Beach Communications,*

11  *Inc.*, 508 U.S. 307, 313 (1993)).  In such cases, the party challenging the statute must demonstrate

12  the difference in treatment is unrelated to the achievement of ***any*** legitimate government purpose.

13  *420 Caregivers, LLC*, 219 Cal. App. 4th at 1334. Thus, the challenging party must negate every

14  conceivable legitimate basis which might support the statutory classification.  *See FCC,* 508 U.S.

15  at 315.  The actual motivation of the legislative body is entirely irrelevant for constitutional

16  purposes.  "In other words, a legislative choice is not subject to courtroom fact-finding and may be

17  based on rational speculation unsupported by evidence or empirical data." *Id.*

18  In this case, the County has a legitimate interest in regulating the location of cannabis

19  cultivation directly adjacent to the YBWAH.  The Interim Ordinance explained that regulation of

20  marijuana is necessary to prevent harm to the health, welfare and safety of the community, and to

21  avoid the risks of criminal activity, degradation of the natural environment and offensive odor that

22  can result from unregulated marijuana cultivation.  Yolo County Ordinance No. 1467, § 1(I).  To

23  minimize these risks to the community, cannabis cultivation was prohibited within 1,000 feet of a

24  "Park, a Church, a Residential treatment facility or federal lands held in trust by the federal

25  government…."  YCCO § 5-20.05.  Plaintiff ***does not*** challenge the general location restrictions in

26  the Interim Ordinance, but rather only the specific inclusion of the YBWAH in the definition of

27  the term "park," since it made him be out of compliance with the County Code.  However, the

28  County has a legitimate interest in minimizing the impacts of this public nuisance on the

1  community by prohibiting cultivation in areas adjacent to locations open to the public.

2      As set forth in Exhibit J to the Complaint, and incorporated by reference into the

3  Complaint in paragraph 20, the County provided a rational basis for including the YBWAH in the

4  definition of "Park."  The YBWAH headquarters is a community building that serves the public

5  by offering education programs for K-12 students and members of the local community.  It serves

6  as a gateway to public walking trails, which are the location of summer camps and field trips. The

7  complaint sets forth no facts suggesting that the County's Amendment to the Interim Cannabis

8  Ordinance lacked a rational basis.  Thus, the sixth cause of action is defective.

9      **C.      In Addition to these Fatal Flaws, the Complaint Contains other Defects that**
             **Cannot be Cured by Leave to Amend**
10

11      Even assuming, *arguendo*, that Plaintiff could overcome the fatal flaws discussed above,

12  the Complaint cannot survive a motion to dismiss for the following additional reasons.

13          **1.      Plaintiff Fails to Allege a Compensable "Taking"**

14      There is no compensable taking for the inverse condemnation claims if "the proscribed use

15  interests are not part of [the property owner's] title to begin with."  *Lucas v. South Carolina*

16  *Coastal Council*, 505 U.S. 1003, 1020 (1992).  Here, the temporary license was never included in

17  Plaintiff's title.  *See* Complaint Ex. C.  Further, the allegations in the Complaint admit that

18  Plaintiff's commercial use of the property did not lawfully commence until "final approval of his

19  license" on March 31, 2017, over a year after he purchased the Property in December 2015.

20  Complaint ¶ 11-12.  When Plaintiff purchased his Property, commercial cannabis cultivation in the

21  County was prohibited.  Since the commercial cannabis License was not even a legal possibility

22  when Plaintiff purchased the Property, there cannot be a compensable taking.

23          **2.      The Amendment Did Not Deny Plaintiff of All Economically Beneficial**
                 **Use of his Property**
24

25      As to the first and seventh causes of action, the County's amendment to the Interim

26  Ordinance to include the YBWAH in the definition of "park," does not deprive Plaintiff of "all

27  economically beneficial or productive use of land" because the property is zoned for a number of

28  gainful agricultural, commercial and residential purposes.  A *de facto* (or categorical) taking

---

14

occurs when a regulation denies *all* economically beneficial or productive use of land. *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 834 (1987). In *Palazzolo v. Rhode Island*, 533 U.S. 606, 632 (2001), the U.S. Supreme Court upheld the trial court's finding that the land owner "failed to establish a deprivation of all economic value because the parcel retains significant worth" even for a use as little as construction of a residence.

Here, the Property is allowed one primary dwelling or a duplex of unlimited size and one secondary dwelling up to 2,500 square feet. YCCO Table 8-2.305. Under *Palazzolo*, this use alone results in dismissal of Plaintiff's claim for a *de facto* taking. But that's not all; Plaintiff's property is zoned for various uses including agricultural production and processing, and commercial distribution and retail businesses. YCCO § 8-2.302. Thus, contrary to Plaintiff's conclusory allegation that the Amendment to the Interim Cannabis Ordinance has deprived him of all economically beneficial use, Plaintiff retains a whole host of rights to use the property for gainful agricultural, commercial, and residential purposes. Since the property can be used in a number of economically beneficial ways, there has been no *de facto* taking of Plaintiff's property.

**3.      The Regulatory Uncertainty Regarding "For Profit" Cannabis Cultivation Refutes any Claim for "Distinct Investment-Backed Expectations"**

The first and seventh causes of action also fail to allege facts that establish any "distinct investment-backed expectations" to commercially cultivate cannabis, which is a necessary element for a takings claim under California and federal law. *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). "'[T]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.'" *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1128 (9th Cir. 2013) (quoting *Concrete Pipe & Prods of Cal., Inc. v. Constr. Laborers Pension Trust for So. Cal.*, 508 U.S. 602, 645 (1993)). In *Guggenheim v. City of Goleta*, the court found that the "primary factor, the extent to which the regulation has interfered with distinct investment-backed expectations" was "fatal" to the plaintiffs' takings claim, where they purchased a mobile home park with a rent control ordinance already in place. 638 F.3d 1111, 1120 (9th Cir. 2010) (en banc) (internal quotations omitted). The court explained, "'[d]istinct investment-backed expectations' implies reasonable

1   probability, like expecting rent to be paid, not starry eyed hope of winning the jackpot if the law

2   changes." *Id*.

3        Similarly, here, any "distinct investment-backed expectations" are implausible due to the

4   regulations regarding commercial cannabis cultivation at the time Plaintiff purchased his property.

5   At the time of Plaintiff's purchase of the property cannabis cultivation for profit was prohibited,

6   and even once allowed, it has been heavily regulated with substantial risks due to the constantly

7   evolving regulations, both locally and by the State.  Further, cannabis cultivation has always been

8   subject to federal prosecution.  Like the landowners in *Guggenheim* who complained of the

9   inability to collect "illegal amounts of rent," here, too, Plaintiff cannot complain of the inability to

10  make a profit on commercial cannabis cultivation.  *Guggenheim*, 638 F.3d at 1120.

11       Moreover, the license was limited in duration and subject to County approval.  Plaintiff

12  claims he "had reasonable expectations to continue to use his Property for cannabis cultivation

13  *after approval of all necessary permits and licenses by Defendant*."  Complaint ¶ 39 (emphasis

14  added).  Plaintiff's conclusion that his expectations of continued cultivation were "reasonable" is

15  contradicted by his own allegation that his future cannabis cultivation was conditioned upon

16  approval by the County.  The license was scheduled to expire on January 31, 2018.  The County

17  warned cultivators against investing substantial amounts due to the uncertainty of the program.

18  *See* RJN, Ex. 6 (July 6, 2017 letter).  The Interim Ordinance was temporary, and subject to a

19  number of amendments.  The temporary nature of the cannabis license clearly refutes any claim of

20  "distinct investment-backed expectations." *See 42.13 Acres of Land*, 73 F.3d at 957 (no economic

21  expectations can follow the expiration of government-issued license).

22       In illustrating the frivolousness of this claim, Plaintiff seeks *$21.6 million* in damages for

23  his "expectation of implementing indoor greenhouse cannabis cultivation." *See* Complaint ¶ 30.

24  As a point of reference, Plaintiff purchased the property for $967,000, demonstrating how

25  unreasonable his purported expectations of making $21.6 million.  Complaint ¶ 8.  Plaintiff is not

26  legally entitled to compensation for his "starry eyed hope of winning the jackpot if the law

27  changes." *Guggenheim*, 638 F.3d at 1120.

28

**4.      The Amendment Substantially Advances Legitimate State Interests,
which Precludes a Finding of a Compensable Taking**

Where the State "reasonably conclude[s] that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land," compensation need not accompany prohibition. *Penn Central Transportation Co.*, 438 U.S. at 125.  It is also well established that the State can exercise its police power to enjoin public nuisances. *See Mugler v. Kansas*, 123 U.S. 623 (1887) (law prohibiting manufacture of alcoholic beverages); *Goldblatt v. Hempstead*, 369 U.S. 590 (1962) (law effectively preventing continued operation of quarry in residential area); *Hadacheck v. Sebastian*, 239 U.S. 394 (1915) (law barring operation of brick mill in residential area).  As explained above, the Amendment advances a legitimate state interest by reducing the impact of the nuisances cannabis can cause on the community.  Thus, the prohibition of outdoor cultivation of medical marijuana within 1,000 feet of the YBWAH does not constitute a compensable taking of private property.

**5.      Plaintiff's Procedural Due Process Claim also fails, because he has not
and Cannot Assert a Denial of Adequate Procedural Protections**

Even if we assume there was a property interest at issue, Plaintiff must plead that there was "a denial of adequate procedural protections." *Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998).  Adequate procedural protections exist where "procedures [are] tailored, in light of the decision to be made, to the capacities and circumstances of those who are to be heard, [citation] to insure that they are given a meaningful opportunity to present their case." *Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976) (internal citations omitted).

In this case, the Amendment to the Interim Ordinance was passed by the Board of Supervisors at a public hearing. *See* RJN, Ex. 3 (Board of Supervisors Meeting Minutes, November 7, 2017).  A number of community members spoke at the hearing regarding the Amendment. *Id.*  Plaintiff never sought declaratory relief to challenge the Amendment to the Interim Ordinance, even though the letter from County Counsel to Plaintiff's attorney specifically stated he could "[file] an action with the appropriate court in connection with the adoption or terms of [the] Ordinance."  Complaint Exhibit J, incorporated by reference into the Complaint in ¶

17

20.  Rather than challenging the Board's adoption of the Amendment to the Ordinance within the requisite time period, Plaintiff instead seeks compensation for the nonrenewal of a temporary cannabis cultivation permit.

If Plaintiff's claim is based on the letter sent by the Cannabis Task Force on December 1, 2017 (Complaint Ex. E), the letter was merely advisory, and cannot be a basis for a due process claim.  Complaint Ex. K.  In *420 Caregivers, LLC*, 219 Cal. App. 4th at 1342–43, the California Court of Appeals for the Second District found that an advisory letter to a collective from the City's chief prosecutor did not constitute grounds for a procedural due process claim under California law, which is broader than the protections afforded under 42 U.S.C. § 1983.   In this case, the December 1, 2017, letter explained that the license would be ineligible for renewal due to violations of the County Code for being in a restricted location.  Complaint Ex. E (incorporated by reference in ¶ 14.)  Plaintiff never requested renewal of the license, and cannot assert procedural due process claims based on the advisory letters.  Even if the letters can be considered for purposes of procedural due process, Plaintiff could have brought a judicial challenge within the applicable time period, but failed to do so.  *See* discussion, *infra*, Section C(7).

For these reasons, the claim for violation of due process should be dismissed.

### 6.   Plaintiff Cannot State a Claim for Violation of Federal Substantive Due Process Because He Cannot Allege Facts to Establish that the County's Amendment was Arbitrary and Capricious

Again, Plaintiff's claim for substantive due process is fatally defective since the Complaint does not claim a constitutionally protectable property interest. Plaintiff's claim also fails because it does not and cannot set forth facts to establish that the governmental action was "arbitrary and capricious."  *Sierra Nevada SW Enterprises, Ltd. v. Douglas Cty.*, 506 F. App'x 663, 665–66 (9th Cir. 2013).  For an action to be "arbitrary and capricious," it must be so egregious as to "amount to an abuse of power lacking any reasonable justification in the service of a legitimate governmental objective." *Id.* at 666 (citations omitted).

Plaintiff alleges that since the YBWAH was established in 1994, the County does not have a rational basis in "designating the YBWAH as a 'park' 23 years after its creation…." (Complaint ¶ 55.)  However, the Interim Ordinance was created in ***March 2016***, and not at the time when the

1   YBWAH was established.  The Interim Ordinance was still developing in March 2017, when

2   Plaintiff received his license, and was subject to a number of amendments.  Reasonable

3   justifications for the specific inclusion of this community center and wildlife habitat in the

4   definition of the term "park" were set forth in the language of the Ordinance, which specifically

5   stated the risks to the community associated with cannabis cultivation.  Further, the letter from

6   County Counsel on December 19, 2017 explained how the community uses this location as a park.

7   Complaint Exhibit J (incorporated by reference into the Complaint in ¶ 20).  Thus, the County did

8   not act "arbitrarily" when it prohibited outdoor cultivation within 1,000 feet of this public area.

9          **7.**       **The State Inverse Condemnation, and the Declaratory Relief and**
                   **Injunctive Relief Claims, are Barred by the Statute of Limitations**

10

11        Plaintiff failed to file the appropriate actions to exhaust his administrative remedies within

12  the applicable time periods; thus, the inverse condemnation claims are time barred.  *See Hensler v.*

13  *City of Glendale*, 8 Cal.4th 1, 13–14 (1994), as modified on denial of reh'g (Sept. 22, 1994).  The

14  90-day limitations periods contained in Government Code section 65009 broadly applies to land

15  use ordinances, and has been regularly applied to local cannabis regulations.  *See, e.g., Travis v.*

16  *Cty. of Santa Cruz*, 33 Cal. 4th 757, 772, 94 P.3d 538, 546 (2004) (broad application of Section

17  65009 where ordinance governs land use issues); *Cty. of Sonoma v. Superior Court*, 190 Cal. App.

18  4th 1312, 1325–26 (applying Section 65009 to local cannabis regulations); *see also People v.*

19  *Urziceanu*, 132 Cal. App. 4th 747, 774 (2005) (same). For a facial challenge of an ordinance, the

20  owner must bring a declaratory relief action within 90 days of when ordinance is enacted.

21  *Hensler*, 8 Cal.4th at 13–14.  For an as-applied challenge, the owner must bring a writ of

22  administrative mandamus within 90 days of the "final determination" of the administrative body.

23  *Id*. at 22.

24        Plaintiff's facial challenge to the amendment to the Interim Ordinance is time barred since

25  he failed to bring a declaratory relief action within 90 days of November 7, 2017, when the

26  Amendment was enacted.  An "as-applied" challenge is also barred because Plaintiff failed to

27  bring a writ of administrative mandamus within 90 days of the County's "final adjudicatory

28

1  administrative decision."[10]  *Hensler*, 8 Cal. 4th at 22; *See* Section 65009(c)(1)(E).  While the

2  County Cannabis Task Force letters were merely advisory, as explained in Section C(5), Plaintiff's

3  purported "as-applied" claim began accruing at that time because there was nothing more for

4  Plaintiff to "discover" regarding the Cannabis Task Force's opinion that the cultivation facility

5  violated the County Code.[11]

6      Because the specific statute of limitations for the inverse claim applies to the declaratory

7  and injunctive relief claims, the claims are also time-barred.  *Gilbert v. City of Cambridge*, 932

8  F.2d 51, 57–58 (1st Cir. 1991) (citing *Cope v. Anderson*, 331 U.S. 461, 464, (1947), and *Russell v.*

9  *Todd*, 309 U.S. 280, 289 (1940)) ("[E]quitable remedies will be withheld if an applicable statute of

10  limitations bars the concurrent legal remedy.").

11  **IV.    CONCLUSION**

12      Plaintiff cannot overcome his inability to plead a "protectable property interest" under both

13  federal and California law.  Further, the YBWAH is a park, and the County's regulations have a

14  rational basis.  Thus, the County requests dismissal of the complaint in its entirety, without leave

15  to amend.

16  DATED:  November 16, 2018              MEYERS, NAVE, RIBACK, SILVER & WILSON

17

18                                      By:    /s/ Brenda Aguilar-Guerrero

19                                      Brenda Aguilar-Guerrero
                                        Attorneys for Defendant County of Yolo

20  3078820.3

---

21  [10] Plaintiff failed to apply for a renewal of his License, and the gravamen of Plaintiff's complaint
    challenges the enactment of the Amendment itself, not the County's application of the Ordinance

22  to Plaintiff's Property.  *See Cty. of Sonoma v. Superior Court*, 190 Cal.App. 4th 1312, 1325–26

23  (2010) (finding challenge to be facial only where cooperative did not seek a conditional use
    permit, despite allegations in complaint).

24  [11] *See e.g.*, *California Coastal Com. v. Superior Court*, 210 Cal. App. 3d 790, 1497 (1989), reh'g

25  denied and opinion modified (June 9, 1989) ("Where review is sought of a Commission decision,
    …[t]he property owner has no need to 'discover' anything.... "); *see also E–Fab, Inc. v.*

26  *Accountants, Inc. Services*, 153 Cal. App. 4th 1308, 1317, 1318 (2007) (a statute of limitations

27  period commences at "the time when the cause of action is complete with all of its elements," or,
    under the "discover rule exception," when "the plaintiff discovers, or has reason to discover, the

28  cause of action").